# In the United States Court of Federal Claims

| | |
|---|---|
| **MIKE ROIG,** *Plaintiff,* v. **THE UNITED STATES,** *Defendant.* | No. 23-00143 (Filed: March 21, 2024) Not for Publication |

*Gary A. Costales*, Gary A. Costales P.A., Miami, Florida, for Plaintiff.

*Ioana C. Meyer*, Trial Attorney, *Eric P. Bruskin*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, and *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**HADJI,** *Judge.*

Before the Court is the Government's Motion to Dismiss Plaintiff Mike Roig's contract dispute action against the United States Department of Veterans Affairs (VA) pursuant to Court of Federal Claims Rules 12(b)(1) and 12(b)(6). ECF 18. The motion is fully briefed. Def.'s Mot. to Dismiss (ECF 18); Pl.'s Resp. (ECF 21); Def.'s Reply (ECF 22). The Government asserts that dismissal is warranted because the agreement is unenforceable due to lack of consideration, and that the other ancillary contractual causes of action, including the breach of the duty of good faith and fair dealing, the declaratory relief request, and the equitable estoppel request are likewise flawed. ECF 18 at 12-24. The Court agrees. For the following reasons, the Government's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) is **GRANTED**.

## BACKGROUND[1]

On September 24, 2019, Plaintiff and the VA agreed to the Veterans Care Agreement (VCA) at issue here, which had a term of three years. Pl. Ex. A, ECF No. 15-1 at 1, 14, 16. Pursuant to the VCA, Plaintiff was to "furnish medically necessary hospital care, medical services, and/or extended care services that are authorized by VA in

---

[1] For purposes of the Motion to Dismiss, the Court accepts the facts asserted in Plaintiff's Complaint as true.

accordance with the terms of this Agreement (Covered Services)." *Id.* at 1 (Section B.1). The VCA required that any services provided by Plaintiff pursuant to the agreement be "authorized in advance by VA through a written or electronic authorization on applicable VA forms" and specified that authorizations "may be issued by VA at any time during the Term of this Agreement." *Id.* (Section C.1, C.2). Further, the VCA states that any authorizations would only be "valid for the specific service(s) identified in the authorization and accompanying consult." *Id.* (Section C.4). Additionally, Plaintiff was required to "only furnish Covered Services authorized by VA in accordance with the terms of this Agreement," and for any additional services, Plaintiff was required to "contact VA to request written authorization to furnish such additional … care services." *Id.* (Section C.6).

Section F of the VCA required that the provider "shall always meet and comply with all applicable VA quality standards and requirements," which "include, but are not limited to, those pertaining to timely care, effective care, safe care, and Veteran-centered care." *Id.* at 4. The VA reserved "the right to inspect and test any services authorized and performed under this Agreement." *Id.* at 5 (Section G.2). Pursuant to Section K, Payment, the VCA noted that "VA shall pay Provider … for Covered Services furnished and accepted." *Id.* at 8 (Section K.1). The VCA also contained a section titled "Discontinuation," allowing the VA to discontinue the VCA for several enumerated reasons. *Id.* at 11 (Section M.2.a). As relevant here, these reasons included:

> (ii) If VA determines Provider failed to comply substantially with any of the provisions, terms, or conditions of this Agreement, including but not limited to any of the requirements and conditions set forth in Section D (Provider Qualifications and Conditions for Provision of Covered Services), Section E (VA Credentialing, Approval, and Disapproval of Providers), and Section F (Quality Standards and Monitoring).
>
> * * *
>
> (v) If VA determines it is reasonable to discontinue the Agreement based on the health care needs of a VA beneficiary.

*Id.* (Section M.2.a).

On February 2, 2023, Plaintiff filed a complaint in this contract dispute action. Compl., ECF 1.[2] On October 18, 2023, Plaintiff filed his Amended Complaint (hereinafter, the Complaint). Am. Compl., ECF 15. The Complaint alleges Plaintiff "performed services pursuant to that VCA from its start in 2019 through the COVID pandemic." Am. Compl. ¶ 20. The Complaint further alleges Plaintiff's "contract was terminated on or about July 7,

---

[2] Plaintiff later filed a Motion for Leave to Amend his Complaint (ECF 13), which the Court granted on October 2, 2023.

2

2021, when Peter Braun, Chief of Dental, wrote that an 'audit revealed that there is a pattern of requesting excessive bone grafting.'" *Id.* ¶ 22. Plaintiff alleges that Braun is not a Periodontist. Am. Compl. ¶ 27. "In fact, he was disciplined as a dentist, and he may not be certified as a dentist." *Id.*

The Complaint also seeks declaratory relief regarding a related contract. Am. Compl. ¶ 57. Specifically, the Complaint alleges that "[s]ometime after the start of the VCA and after [Plaintiff] performed services under the VCA, the VA forced [Plaintiff] to use the services of a third-party administrator, Optum Public Sector Solutions…to process invoices generated in connection with the VCA." *Id.* Accordingly, Plaintiff asserts there is a need to issue a declaratory judgment to determine: (1) the role that Optum had in this matter; (2) whether there is a separate contract that supplanted the VCA in any way and if so, whether the termination provisions of the VCA should have been followed; and (3) whether the Government should be estopped from claiming that the VCA was not applicable due to its use of Optum. *Id.*

Lastly, the Complaint contains an equitable estoppel cause of action. *Id.* ¶¶ 63-64. Specifically, the complaint alleges the "VA was aware that its use of a third-party administrator to process claims might affect the rights and obligations of the parties pursuant to the VCA." *Id.* ¶ 60. It further alleges that the "VA knew that [Plaintiff] would act on its directive to use a third-party administrator to process claims." *Id.* ¶ 61. Plaintiff states in the Complaint that the "VA should be estopped from claiming that [Plaintiff's] use of a third party administrator eliminated or affected to [Plaintiff's] detriment, Defendant VA's obligations under the VCA." *Id.* ¶ 64.

## LEGAL STANDARDS

Defendant moves to dismiss this suit pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims.[3] Rule 12(b)(1) permits dismissal for lack of subject-matter jurisdiction. This Court's jurisdiction is dependent on an unequivocal waiver of sovereign immunity by the United States. *United States v. Testan*, 424 U.S. 392, 399 (1976). If the Court determines that it lacks subject-matter jurisdiction, it must dismiss the action. Rule 12(h)(3); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The plaintiff bears the burden to demonstrate that jurisdiction is proper by a preponderance of the evidence. *Reynolds v. Army And Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When considering a motion to dismiss under Rule 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

---

[3] Court of Federal Claims Rule 12(b)(1) is the same as Federal Rule of Civil Procedure 12(b)(1). *Compare* RCFC 12(b)(1) *with* Fed. R. Civ. P. 12(b)(1). Likewise, Court of Federal Claims Rule 12(b)(6) is the same as Federal Rule of Civil Procedure 12(b)(6). *Compare* RCFC 12(b)(6) *with* Fed. R. Civ. P. 12(b)(6).

Alternatively, Rule 12(b)(6) permits the Court to dismiss an action for failure to state a claim upon which relief may be granted. Dismissal is proper under Rule 12(b)(6) "when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought." *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021). The Court "must accept as true all the factual allegations in the complaint and … must indulge all reasonable inferences in favor of the non-movant." *Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269, 1274 (Fed. Cir. 2023) (quoting *Conti v. United States*, 291 F.3d 1334, 1338 (Fed. Cir 2002). To survive a challenge pursuant to Rule 12(b)(6), a plaintiff must plead more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (interpreting Federal Rule of Civil Procedure 12(b)(6)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## DISCUSSION

Plaintiff's Complaint alleges four causes of action: (I) breach of contract; (II) breach of the duty of good faith and fair dealing; (III) a request for declaratory relief; and (IV) equitable estoppel. These four causes of action are each addressed in turn.

### I. Breach of Contract

The Government moves to dismiss the breach of contract allegation (Count I of Complaint) for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Plaintiff's Complaint asserts that the VA breached the VCA by improperly terminating it on July 7, 2021. Am. Compl. ¶¶ 22, 37-39. However, the Government argues that the Complaint fails to allege the existence of an enforceable contract because the VCA attached and referenced in the Complaint lacked adequate consideration. ECF 18 at 14-15.

To have a valid claim for breach of contract, Plaintiff must show: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. *Peanut Wagon, Inc. v. United States*, 167 Fed. Cl. 577, 602 (2023) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)).

The first element, a valid contract, is in dispute here. "To be valid and enforceable, a contract must have both consideration to ensure mutuality of obligation … and sufficient definiteness so as to provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380, 1382 (Fed. Cir. 2014). "The pertinent question is whether the agreement as a whole is supported by mutual consideration." *Florida Keys Aqueduct Auth. v. United States*, 7 Cl. Ct. 297 (1985), *aff'd.*, 790 F.2d 95 (Fed. Cir 1986). The type of consideration required varies by contract type. "In a requirements contract, the seller's promise to satisfy the buyer's requirements and the buyer's promise to purchase all its requirements from the seller ensure mutuality of obligation." *Mason v. United States*, 615 F.2d 1343, 1349 (Ct. Cl. 1980). Nothing more is required for such a contract to be fully enforceable. *Id.* (adding

4

that a guaranteed minimum purchase amount would add nothing to the enforceability of a requirements contract). In contrast, an enforceable indefinite quantity contract requires a guaranteed minimum purchase amount. *Id.* ("A guaranteed minimum purchase amount is … essential to there being an enforceable indefinite quantities contract."). Courts have declined to find enforceable contracts where neither condition is met. *See, e.g., Coyle's Pest Control, Inc. v. Cuomo*, 154 F.3d 1302, 1304, 1306 (Fed. Cir. 1998) (holding that a purported contract failed for lack of consideration where the contract contained no clause requiring the Government to order a minimum quantity or a clause requiring the agency to purchase all of its requirements from the contractor).

Here, the VCA at issue does not contain the necessary elements of an enforceable indefinite quantity contract, an enforceable requirements contract, or any other type of enforceable contract. Specifically, the VCA lacks a clause stating a minimum quantity that the VA must order from Plaintiff or a clause requiring the VA to purchase all of its requirements from Plaintiff. In fact, there is not even a clause requiring the VA to purchase *any* requirement from Plaintiff, and the VCA actually specifically *prohibits* Plaintiff from commencing any work without explicit authorization from the VA. Accordingly, the VCA lacks the minimum guarantee element necessary to make it an indefinite quantity contract and the exclusivity of requirements element necessary to make it a valid requirements contract. As such, the VCA is unenforceable.

Plaintiff maintains that the VCA is an enforceable contract by pointing to: (1) the "extensive terms" Plaintiff had to meet to become a provider of services for the VA; (2) the "amounts Plaintiff was to be paid pursuant to the [VCA]"; and (3) the "detailed terms and provisions for the termination of the VCA." ECF 21 at 3-4. However, none of these attributes salvage the VCA. The dispositive issues for determining whether the VCA is enforceable is whether the Government guarantees a minimum, or alternatively, whether a contractor has exclusive rights to the work. *See, e.g.*, *Mason*, 615 F.2d at 1349. Since both of these elements are missing from the VCA, the necessary elements of an enforceable indefinite quantity contract or a requirements contract are absent. Because there is no enforceable contract, the Court dismisses the breach of contract allegation.

## II.    Breach of Duty of Good Faith and Fair Dealing

The Government moves to dismiss Count II of the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). ECF 18 at 14-19. Count II alleges the Government breached the duty of good faith and fair dealing by having a dentist who was not a board-certified periodontist review Plaintiff's recommendations for bone grafting procedures. ECF 15 ¶ 49-51. Plaintiff further alleges that the dentist that reviewed his work had been disciplined by Vermont Board of Medical Examiners. *Id.* ¶ 51.

The duty of good faith and fair dealing imposes obligations on parties to a contract, including "the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the

contract." *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014) (internal citations omitted). This duty, however, does not impose any obligations or restrictions that are inconsistent with the parties' reasonable expectations under the original bargain. *See, e.g.*, *id.* Rather, the duty's focus is on "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.* (quoting Restatement (Second) of Contracts § 205 cmt. a (Am. L. Inst. 1981)). Accordingly, "the nature of [the parties'] bargain is central to keeping the duty focused on 'honoring the reasonable expectations created by the autonomous expressions of the contracting parties'" and is thus limited by the original bargain. *Id.* (quoting *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1152 (D.C. Cir. 1984)); *see also LaBatte v. United States*, 142 Fed. Cl. 425, 432-33 (2019) ("The reasonable expectations of the parties thus define the contours of the implied duty of good faith and fair dealing.").

The crux of Plaintiff's argument is that he is more qualified and trustworthy than the general dentist selected by the Government to review his work. Regardless of whether Plaintiff's viewpoint has any merit or not, the notion that he is entitled under the VCA to have a specialist review his work or to have a dentist with an unblemished disciplinary record were not terms of the VCA. These were also not reasonable expectations of the agreement he struck with the VA. Moreover, as the Government argues in its brief, the underlying statutes and regulations governing the VCA contain no indication that such a specific obligation would attach to and limit the VA's ability to administer the VCA. *See* 38 U.S.C. § 1703A(a) and 38 C.F.R. § 17.4115(a) (2019). Instead, the dispute provisions at 38 C.F.R. § 17.4135 require only that the VA officials resolving disputes arising from VCAs act pursuant to authority delegated by the Secretary of Veterans Affairs, not that they have certain qualifications. *See* 38 C.F.R. § 17.4315(c)(2) (2019). Accordingly, the Court finds the VCA did not create a duty on the VA to only use officials with specialist qualifications to review or audit Plaintiff's performance rather than a general dentist. Therefore, pursuant to Rule 12(b)(6), the Court dismisses Count II of the Complaint.

### III.   Declaratory Relief

Pursuant to Rule 12(b)(1), the Government moves to dismiss Count III of the Complaint, which seeks declaratory relief regarding the role Optum had in the VCA and the relationship between the Optum contract and the VCA, for lack of subject matter jurisdiction. ECF 18 at 19.

This Court, like all federal courts, is a court of limited jurisdiction; its jurisdiction is generally defined by the Tucker Act. 28 U.S.C. § 1491; *Bibbs v. United States*, 2000 WL 27901, at \*2 (Fed. Cir., Jan. 11, 2000). This Court does not have general authority to issue equitable relief, including declaratory relief. *Richardson v. Morris*, 409 U.S. 464, 465 (1973) (noting the Tucker Act "has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States."); *see also United States v. Tohono O'Odham Nation*, 563 U.S. 307, 313 (2011) (noting this Court "has no general power to provide equitable relief against the Government or its officers."); *Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 999 (Fed. Cir. 2017) (noting the Tucker Act

6

"does not generally confer jurisdiction for actions seeking declaratory or injunctive relief.").

In the context of contract claims, this Court may provide equitable relief under 28 U.S.C. § 1491(a)(2) that is "incident of and collateral to" a monetary judgment. ("To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States."). The Federal Circuit has emphasized that any equitable relief awarded pursuant to § 1491(a)(2) must be tied to, and in support of, a money judgment. *See, e.g.*, *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (finding equitable relief under § 1492(a)(2) must be "'an incident of and collateral to' a money judgment."). In *James*, the Federal Circuit summarized the statute's requirement succinctly: "[s]tated another way, the Court of Federal Claims has no power 'to grant affirmative nonmonetary relief unless it is tied and subordinate to a money judgment.'" *Id.* (quoting *Austin v. United States*, 206 Ct. Cl. 719, 723 (1975)), *cited in Shelden v. United States*, 742 F. App'x 496, 502 (Fed. Cir. 2018) (per curiam).

Here, as the Government correctly points out, the only monetary judgment Plaintiff seeks is in connection with the VCA, and thus any declaratory judgment regarding the Optum contract would not be collateral to a money judgment sought here. Such a decision interpreting the Optum contract would constitute a stand-alone judgment over which this Court does not possess jurisdiction. Accordingly, pursuant to Rule 12(h)(3), the Court dismisses Count III of the Complaint.

## IV. Equitable Estoppel

The Government moves to dismiss Plaintiff's equitable estoppel cause of action (Count IV) pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff claims that he was misled by the VA because the VA was aware that by providing services under the Optum contract (a separate contract from the one that forms the basis of the breach of contract allegation in this litigation) Plaintiff would not receive authorizations under his VCA (the contract that is the basis of the breach of contract allegation in this litigation). Am. Compl. ¶¶ 60-63. Accordingly, he asks that the VA be estopped from claiming that his work under the Optum contract affected his obligations under the VCA. *Id.* ¶ 64.

To demonstrate equitable estoppel, a party must allege: (1) misleading conduct, including not only statements and actions but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted. *Mabus v. Gen. Dynamics C4 Sys., Inc.*, 633 F.3d 1356, 1359 (Fed. Cir. 2011). When bringing this allegation against the Government, a heightened standard applies that requires the moving party to, in addition to the traditional elements, show "some form of

7

affirmative misconduct." *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000); *see also Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 60, 67 (1984). Mere negligence is insufficient, and thus any party alleging such a claim against the Government "bears a heavy burden." *Kaeper Mach., Inc. v. United States*, 74 Fed. Cl. 1, 7-8 (2006); *see also Melrose Assocs., L.P. v. United States*, 45 Fed. Cl. 56, 60 (1999) (finding that no bad faith existed when the government employee lacked "intent to injure the plaintiff").

Plaintiff has not pled facts to meet his burden. The Complaint lacks any allegation that the VA misled Plaintiff in any way. Plaintiff does not allege that the VA made any statements or actions promising that he would receive authorizations pursuant to the VCA, or that his work on other contracts would still allow him to receive such authorizations. *See generally* Am. Compl. Moreover, the Complaint lacks any allegation of affirmative misconduct on the part of the VA, as required to demonstrate equitable estoppel against the Government. *Id.* Plaintiff's allegations that the "VA was aware that its use of a third-party administrator to process claims might affect the rights and obligations of the parties pursuant to the VCA" does not suffice. *Id.* ¶ 60. Nor does the conclusory statement that the "VA knew that [Plaintiff] would act on its directive to use a third-party administrator to process claims." *Id.* ¶ 61; *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1316 (Fed. Cir. 2011) ("[W]e are not required to assume that legal conclusions are true."). Collectively, these statements at best indicate knowledge of some information that could potentially adversely impact Plaintiff. The Complaint fails to plead the "heavy burden," *Kaeper*, 74 Fed. Cl. at 8, of demonstrating "some form of affirmative misconduct" as required. *See Zacharin,* 213 F.3d at 1371. Accordingly, Plaintiff's estoppel claim fails as a matter of law. Therefore, the Court dismisses Count IV of the Complaint pursuant to Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, pursuant to Rules 12(b)(1) and 12(b)(6), the Court **GRANTS** the Government's Motion to Dismiss (ECF 18). The Clerk of Court is directed to enter judgment in favor of the Government.

**IT IS SO ORDERED.**

PHILIP S. HADJI
Judge